**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Catherine G. Dearlove, Esq.
Kevin M. Gallagher, Esq.
Matthew W. Murphy, Esq.
RICHARDS, LAYTON
& FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

John W. Shaw, Esq.
Karen E. Keller, Esq.
Nathan R. Hoeschen, Esq.
SHAW KELLER LLP
I.M. Pei Building
1105 N. Market St., 12th Floor
Wilmington, DE 19801

RE:   *NB Alternatives Advisers LLC, et al. v. VAT Master Corp. and
VAT Master Limited Partnership*,
C.A. No. 2020-0930-SG

Date Submitted:   April 7, 2021
Date Decided:     April 22, 2021

Dear Counsel:

This expedited matter involves the Plaintiffs' request to enjoin the Defendants

from litigation in Wisconsin on the basis of a mandatory Delaware venue provision.[1]

To prevail, the Plaintiffs must show: (1) actual success on the merits, (2) that they

would be irreparably harmed without the injunction, and (3) the balance of hardships

---

[1] I address the merits of this expedited matter in abbreviated, letter, form due to the exigencies of the case, and not as a reflection of the importance of the issues raised. The facts are drawn from exhibits jointly submitted for the permanent injunction hearing, held on April 7, 2021, and will be referred by their exhibit number as "JX __".

weighs in favor of an injunction.[2] If I find that the Plaintiffs are correct that the mandatory Delaware venue provision applies, the prosecution of the Wisconsin suit outside of Delaware, in violation of the mandatory venue provision, would constitute irreparable harm.[3] The balance of the equities, similarly, would weigh in favor of the Plaintiffs should the provision apply, because the Defendants "will suffer no harm by being forced to bring their claims in the forum where they agreed to litigate."[4] Accordingly, I turn to the merits of the permanent injunction request.

The parties are associated with members in a former Delaware LLC, originally called T. Wall Properties, but renamed Vanta, LLC. In the Wisconsin complaint,[5] the Wisconsin plaintiffs (generally, the Defendants here) allege fraud, breach of the Vanta LLC Operating Agreement (the "Operating Agreement"), and breach of fiduciary duty against the Wisconsin defendants (the Plaintiffs here), arising from an alleged scheme to use the Board of Managers to siphon value from Vanta. The Wisconsin complaint sets forth nine "claims for relief."[6] Count I is not truly a claim; it is a pleading in avoidance of the statute of limitations.[7] Count II sounds in breach of fiduciary duty and bad faith.[8] Count III alleges breach of the Operating

---

[2] *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 380 (Del. 2014), *as revised* (Nov. 10, 2014).

[3] *See SPay, Inc. v. Stack Media Inc.*, 2021 WL 1109181, at *2 (Del. Ch. Mar. 23, 2021).

[4] *Id.*

[5] JX 1.

[6] JX 1, at 32.

[7] JX 1 ¶¶ 88–91.

[8] JX 1 ¶¶ 92–95.

Agreement.[9]  Count V alleges fraud in connection with the formation and operation of Vanta.[10]  Count VI alleges civil conspiracy in connection with the wrongs just stated;[11] similarly, Count VII seeks to recover for unjust enrichment flowing from the acts alleged.[12]  Counts VIII and IX are not claims, but damages pleadings.[13] Generally, all these counts relate to or derive from the Operating Agreement.

Count IV is the outlier.  It alleges breach of a term of a settlement agreement the ("2013 Settlement Agreement") among several of the parties here, also involving a Wisconsin LLC, Bishops Bay.[14]

The Plaintiffs seek to enjoin this litigation based on the explicit terms of the Operating Agreement, which provides at paragraph 11.13:

> (a) Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any Delaware State court or federal court of the United States of America sitting in Wilmington, Delaware, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such Delaware State court or, to the extent permitted by law, in such federal court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

---

[9] JX 1 ¶¶ 96–100.
[10] JX 1 ¶¶ 106–115.
[11] JX 1 ¶¶ 116–121.
[12] JX 1 ¶¶ 122–125.
[13] JX 1 ¶¶ 126–131.
[14] JX 1 ¶¶ 101–105.

(b) Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any of the transactions contemplated hereby in any Delaware State or federal court of the United States of America sitting in Wilmington, Delaware, and any appellate court from any thereof. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceedings in any such court.[15]

This is a broad venue provision. It unambiguously provides for Delaware venue for "any action . . . arising out of or relating to this Agreement."[16] No party entering the Operating Agreement could have had any doubt that it was "irrevocably and unconditionally" binding itself to a Delaware forum for disputes.[17]

The Defendants point to the language in Section 11.13(a) providing that each party agrees that such actions "may" be heard in Delaware state court, or, if permissible, in Delaware federal court; this, per the Defendants, creates an ambiguity as to whether the provisions are mandatory. To my mind, the language is clear; suits relating to the Operating Agreement must be brought in Delaware.[18] The provision

---

[15] JX 2 § 11.13.

[16] JX 2 § 11.13.

[17] JX 2 § 11.13. *See SPay, Inc. v. Stack Media Inc. k/n/a/ JLC2011, Inc., et al*, 2021 WL 1109181, at *2 (Del. Ch. Mar. 23, 2021) (noting that the Court will enjoin a party from prosecuting an action elsewhere where the forum selection clause "makes it absolutely clear the parties believed that [this] court should forever be the only forum for resolving the dispute" (quoting *Eisenbud v. Omnitech Corp. Sols., Inc.*, 1996 WL 162245, at *2 (Del. Ch. Mar. 21, 1996))).

[18] Indeed, language substantially similar to the first portion of Section 11.13(a) was at issue in *SPay, Inc. v. Stack Media Inc. k/n/a/ JLC2011, Inc., et al.* In that case, Vice Chancellor Slights found that language reading "[e]ach of the parties irrevocably submits to the exclusive jurisdiction of the Delaware Court of Chancery . . . for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby" applied to a suit alleging

involving the word "may" means only that, although courts in Delaware have exclusive jurisdiction, the suit may be brought in *either* state or federal court.

The Plaintiffs request that I specifically enforce the Operating Agreement. The Defendants counter that other agreements contemporaneous with the Operating Agreement contain venue provisions calling for litigation in non-Delaware forums. The Defendants argue that these are implicated in the broad scheme of fraud worked by the Plaintiffs. Perhaps, but the gravamen of the Wisconsin complaint is clearly breach of the Operating Agreement or duties arising therefrom. Five of the nine counts brought in the Wisconsin complaint relate to the Operating Agreement.[19] Of the remaining four, as I noted above, three are not really claims at all. Only Count IV does not clearly relate to the Operating Agreement above other agreements. It is clear to me, therefore, that the Plaintiffs are entitled to the injunction they seek; absent such relief, the exclusive forum provision would be a nullity.

---

fraudulent inducement to enter the agreement at issue. 2021 WL 1109181, at *2. By comparison, the language here reads: "Each of the parties . . . irrevocably and unconditionally submits . . . to the exclusive jurisdiction of any Delaware State court . . . in any action or proceeding arising out of or relating to this Agreement . . . ." JX 2 § 11.13(a). There is, in my view, no significant difference between the language in *SPay* and here.

[19] Count II, which sounds in breach of fiduciary duty, must be based on the Operating Agreement, because fiduciary duties arise from that agreement. Count III alleges breach of the Operating Agreement itself. Count V alleges fraud in the formation and operation of Vanta—which goes to the Operating Agreement that formed Vanta and by which Vanta was operated. Count VI alleges civil conspiracy in connection with the wrongs just stated—which are inextricably tied to the Operating Agreement. And Count VIII similarly argues unjust enrichment resulting from those alleged wrongs. JX 1 ¶¶ 92–125.

The Defendants make an additional argument, however. They point out that one of the breaches of the Operating Agreement they allege arises from a duty added to that Agreement by amendment. That amendment (the "First Amendment")[20] was called for in, and was made in consummation of, a Settlement Agreement entered into in 2013.[21] I note that the First Amendment itself did not purport to amend the venue provision of Section 11.13 of the Operating Agreement, and therefore that provision is operative. But the Defendants point out that the Settlement Agreement has its own venue provision, at Section 15: "any litigation necessary to enforce any of the provision of [the Settlement Agreement] shall be venued[22] in the Circuit Court . . . in Madison, Dane County, Wisconsin."[23] The Defendants posit that at least Count IV of their Wisconsin complaint seeks to do precisely that, and therefore the Wisconsin forum is proper.

I find that the bulk of the Wisconsin complaint arises out of or relates to the Operating Agreement, and that such litigation must therefore be brought in Delaware. The parties have contended with vigor whether Count IV is truly based on breach of the Settlement Agreement rather than the Operating Agreement as

---

[20] *See* JX 3.

[21] *See* JX 4.

[22] I understand that in the free-swinging twenty-first century, verbs and nouns are not binary concepts, and each is free to dabble in the other's pond. Some such usages ring like a cracked bell, nonetheless. I confess, the verbal form of "venue" is one: hearing it makes me break out in hives (or, consonant with this locution, I'm hived).

[23] JX 4 § 15.

6

amended, and on the breadth of the forum provision in the Settlement Agreement. Before resolving such matters, it seems to me prudent that, in light of this ruling, the parties indicate whether this litigation will be refiled in this forum in its entirety, or whether a dispute remains as to Count IV. I ask counsel to report to me by May 3, 2021 whether these or other issues remain to be decided.

To the extent the foregoing requires an order to take effect, it is SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

cc: All counsel of record (by *File & ServeXpress*)